AO 120 (Rev. 08/10)

| TO:    Mail Stop 8<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | REPORT ON THE<br>FILING OR DETERMINATION OF AN<br>ACTION REGARDING A PATENT OR<br>TRADEMARK |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court __for the District of Utah__ on the following

☐ Trademarks or   ☒ Patents .  (   ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>2:23-cv-00552-BSJ | DATE FILED<br>8/22/2023 | U.S. DISTRICT COURT<br>District of Utah, 351 S. West Temple, Rm. 1.100, Salt Lake City, UT 84101 |
|---|---|---|
| PLAINTIFF<br><br>DISH Technologies L.L.C. et al | | DEFENDANT<br><br>MG Premium Ltd et al |

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 | | SEE COPY OF COMPLAINT ATTACHED |
| 2 | | SEE COPY OF COMPLAINT ATTACHED |
| 3 | | SEE COPY OF COMPLAINT ATTACHED |
| 4 | | SEE COPY OF COMPLAINT ATTACHED |
| 5 | | SEE COPY OF COMPLAINT ATTACHED |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY | | |
|---|---|---|---|
| | ☐ Amendment   ☐ Answer   ☐ Cross Bill   ☐ Other Pleading | | |
| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK | |
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK<br>Gary P. Serdar | (BY) DEPUTY CLERK | DATE |
|---|---|---|

**Copy 1—Upon initiation of action, mail this copy to Director     Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director     Copy 4—Case file copy**

Brent O. Hatch (5715)
hatch@hatchpc.com
Adam M. Pace (14278)
pace@hatchpc.com
HATCH LAW GROUP, P.C.
22 East 100 South, Suite 400
Salt Lake City, Utah 84111
Telephone: (801) 869-1919

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DISH TECHNOLOGIES L.L.C. and SLING TV L.L.C.<br><br>Plaintiffs,<br><br>v.<br><br>MG PREMIUM LTD, MG BILLING LTD, and MG BILLING IRELAND LTD, SONESTA TECHNOLOGIES, s.r.o., SONESTA MEDIA, s.r.o., and YELLOW PRODUCTION, s.r.o.<br><br>Defendant. | **COMPLAINT**<br>**(Jury Trial Demanded)**<br><br>Case: 2:23-cv-552<br><br>Judge: _____ |

Plaintiffs DISH Technologies L.L.C. and Sling TV L.L.C. (collectively, "DISH") allege against Defendants MG Premium Ltd, MG Billing Ltd, MG Billing Ireland Ltd, Sonesta Technologies, s.r.o., Sonesta Media, s.r.o., and Yellow Production, s.r.o. (collectively, "Defendants") as follows:

## PRELIMINARY STATEMENT

1.      This is a case of willful infringement of DISH's valuable patents related to streaming content to computing devices.  Defendants have infringed those patents and used DISH's technology to stream on adult-oriented websites operated or owned by several foreign entities located in the Republic of Cyprus and other jurisdictions.  DISH seeks to recover damages for

Defendants' infringement and to obtain injunctive relief to preclude Defendants from further use of DISH technology.

**PARTIES**

2.      Plaintiff DISH Technologies L.L.C. is a limited liability company organized and existing under the laws of the State of Colorado, with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.  It provides innovation and technology services and products to, among others, the DISH Network® satellite pay TV service operated by DISH Network L.L.C. and the Sling TV® streaming pay TV service operated by Sling TV L.L.C.

3.      Plaintiff Sling TV L.L.C. is a limited liability company organized and existing under the laws of the State of Colorado, with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.  It operates the Sling TV® streaming pay TV service.

4.      On information and belief, Defendant MG Premium, Ltd, is a private limited company organized under the laws of the Republic of Cyprus, with its principal place of business located at 195-197 Old Nicosia-Limassol Road, Block 1 Dali Industrial Zone, Cyprus 2540.  On information and belief, Defendant alone—or in conjunction with other defendants, such as Yellow Production, s.r.o.—operates online streaming services available on a premium subscription website for at least the following companies: Brazzers, available through http://www.brazzers.com; Digital Playground, available through https://www.digitalplayground.com; Men.com, available through http://www.men.com; Babes.com, available through https://www.babes.com; SeanCody, available through https://www.seancody.com; TransAngels, available through https://transangels.com; Reality Kings, available through https://www.realitykings.com; MOFOS, available through https://www.mofos.com; Twistys, available through https://www.twistys.com; Whynotbi, available through https://www.whynotbi.com; FAKEhub, available through

https://www.fakehub.com; FAKETAXI, accessible through https://www.faketaxi.com; lesbea, available through https://lesbea.com; dane jones, accessible through https://www.danejones.com; SEXYhub, accessible through https://sexyhub.com; I Know That Girl, available through https://iknowthatgirl.com; mile high, available through https://milehighmedia.com; Bang Bros, available through https://bangbros.com. The listed websites are exemplary and not limited to all of the infringing websites provided by Defendants (the listed exemplars and additional infringing streaming services are collectively referred to herein as the "Accused Streaming Services").

5.       On information and belief, Defendant MG Billing, Ltd, is a private limited company organized under the laws of the Republic of Cyprus, with its principal place of business located at 195-197 Old Nicosia-Limassol Road, Block 1 Dali Industrial Zone, Cyprus 2540. On information and belief, Defendant MG Billing, Ltd participates with Defendant MG Premium, Ltd in the operation of online streaming services available on a premium subscription website for the Accused Streaming Services.

6.       On information and belief, Defendant MG Billing Ireland, Ltd, is a private limited company organized under the laws of Ireland, with its principal place of business located at 195-197 Old Nicosia-Limassol Road, Block 1 Dali Industrial Zone, Cyprus 2540. On information and belief, Defendant MG Billing Ireland, Ltd facilitates the operation of online streaming services available on a premium subscription website for the Accused Streaming Services.

7.       MindGeek has been used as a catch-all trade name for all of the Accused Streaming Services. On information and belief, MindGeek underwent a name and branding change to revise its name to Aylo. *See* https://www.aylo.com/newsroom/mindgeek-rebrands/; https://endsexualexploitation.org/articles/pornhub-parent-company-changes-name-in-attempt-to-sanitize-image/.

8.     On information and belief, Defendant Sonesta Technologies, s.r.o. ("Sonesta Tech") is a limited liability company organized under the laws of the Czech Republic, with its principal place of business located at Krakovská 1366/25, Nové Město (Praha 1), 110 00 Prague, Czech Republic.  On information and belief, Sonesta Tech operates subscription-based online streaming websites, such as the website BangBros.com.

9.     On information and belief, Defendant Sonesta Media, s.r.o. ("Sonesta Media") is a limited liability company organized under the laws of the Czech Republic, with its principal place of business located at Krakovská 1366/25 Praha 1 - Nové Město, Hlavní město Praha, 110 00 Prague, Czech Republic.  On information and belief, Sonesta Media facilitates the online streaming of subscription-based websites, such as Pornhub.com, Xvideos.com, and Xnxx.com.

10.     On information and belief, Defendant Yellow Production s.r.o. ("Yellow Production") is a limited liability company organized under the laws of the Czech Republic, with its principal place of business located at Kubišova 919/19, 18200 Praha – Libeň.  On information and belief, Yellow Production produces and facilitates the streaming of videos on online subscription-based video websites, such as FakeTaxi.com, FakeHub.com, FakeDrivingSchool.com, PublicAgent.com, and FakeHostel.com.

## JURISDICTION AND VENUE

11.     DISH asserts a claim for patent infringement against Defendants arising under the patent laws of the United States, Title 35 of the United States Code.  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12.     This Court has personal jurisdiction over Defendants MG Premium, Ltd, MG Billing, Ltd, MG Billing Ireland Ltd, Sonesta Techs, Sonesta Media, and Yellow Production for at least the following reasons: (1) Defendants are incorporated in Cyprus, Ireland, and the Czech Republic,

not in the United States, subjecting them to jurisdiction in any judicial district in which they have operated or are operating; (2) Defendants have committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District; (3) Defendants regularly have done business or solicit business in this District; (4) Defendants engage in other persistent courses of conduct and derive substantial revenue by offering and providing infringing products and services in this District; and (5) Defendants have purposefully established substantial, systematic, and continuous contacts with this District and should reasonably expect to be haled into court here by its offering of infringing products and services and providing infringing products and services in this District.

13.     Venue is proper in the District of Utah under at least 28 U.S.C. §§ 1391(b), (c) and/or 1400(b) at least because Defendants are incorporated outside of the United States.  Additionally, on information and belief, Defendants have no principal places of business in any judicial district of the United States.  Moreover, on information and belief, Defendants have committed acts of infringement in the State of Utah, including but not limited to offering products or services that infringe one or more of DISH's asserted patents to customers located in Utah and/or for use in Utah.

14.     Moreover, venue is proper in the District of Utah because Defendants have directed their infringing acts towards the State of Utah.  Specifically, the Accused Streaming Services that Defendants own and operate are specifically tailored to do business in Utah.  For example, upon the passage of Utah Senate Bill 287, which requires the Accused Streaming Services to verify the adult age of viewers, Defendants began showing the following image on their sites to viewers accessing a site from an Internet Protocol ("IP") address located in Utah:



The Accused Streaming Services are directed specifically to residents of Utah.

15.     The District of Utah is also the most convenient forum.  In addition to Defendants'
infringement of the Asserted Patents in Utah, the inventors listed on the patents at issue are located
in Utah, the inventive work leading to the patents at issue was largely done in Utah, DISH
maintains offices in Utah, and some of the ABR inventors are or were DISH employees who work
in DISH's Utah offices.

## THE ABR PATENTS

16.     On November 5, 2019, the PTO duly and lawfully issued United States Patent No.
10,469,554 ("the '554 Patent"), entitled "Apparatus, system, and method for multi-bitrate content
streaming."  A true and correct copy of the '554 Patent is attached as Exhibit A.  The named
inventors of the '554 Patent are David F. Brueck of Saratoga Springs, Utah, Mark B. Hurst of

Cedar Hills, Utah, and R. Drew Major of Orem, Utah. Subject to the exclusive license referenced below, all rights, title, and interest in and to the '554 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '554 Patent.

17.    On June 13, 2023, the PTO duly and lawfully issued United States Patent No. 11,677,798 ("the '798 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming." A true and correct copy of the '798 Patent is attached as Exhibit B. The named inventors of the '798 Patent are David F. Brueck of Saratoga Springs, Utah, Mark B. Hurst of Cedar Hills, Utah, and R. Drew Major of Orem, Utah. Subject to the exclusive license referenced below, all rights, title, and interest in and to the '798 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '798 Patent.

18.    On August 2, 2016, the PTO duly and lawfully issued United States Patent No. 9,407,564 ("the '564 Patent"), entitled "Apparatus, system, and method for adaptive-rate shifting of streaming content." A true and correct copy of the '564 Patent is attached as Exhibit C. The named inventors of the '564 Patent are Mark B. Hurst of Cedar Hills, Utah and R. Drew Major of Orem, Utah. Subject to the exclusive license referenced below, all rights, title, and interest in and to the '564 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '564 Patent.

19.    On March 16, 2021, the United States Patent and Trademark Office (the "PTO") duly and lawfully issued United States Patent No. 10,951,680 ("the '680 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming." A true and correct copy of the '680 Patent is attached as Exhibit D. The named inventors of the '680 Patent are David F. Brueck of Saratoga Springs, Utah, Mark B. Hurst of Cedar Hills, Utah, and R. Drew Major of Orem, Utah. Subject to the exclusive license referenced below, all rights, title, and interest in and to the '680

Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '680 Patent.

20. On October 21, 2014, the PTO duly and lawfully issued United States Patent No. 8,868,772 ("the '772 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming." A true and correct copy of the '772 Patent is attached as Exhibit E. The named inventors of the '772 Patent are R. Drew Major of Orem, Utah, and Mark B. Hurst of Cedar Hills, Utah. Subject to the exclusive license referenced below, all rights, title, and interest in and to the '772 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '772 Patent.

21. On October 21, 2014, the PTO duly and lawfully issued United States Patent No. 11,470,138 ("the '138 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming." A true and correct copy of the '138 Patent is attached as Exhibit F. The named inventors of the '138 Patent are David F. Brueck of Saratoga Springs, Utah, Mark B. Hurst of Cedar Hills, Utah, and R. Drew Major of Orem, Utah. Subject to the exclusive license referenced below, all rights, title, and interest in and to the '138 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '138 Patent.

22. DISH Technologies has entered into an exclusive license with Sling TV L.L.C. granting substantial rights in the above identified patents to Sling TV L.L.C., including the right to sue thereon.

23. The claimed inventions in these patents are directed to various novel aspects and improvements to adaptive bitrate streaming ("ABR") technology. The '680, '798, '564, '554, '772, and '138 Patents (collectively, "the ABR Patents") are currently in full force and effect. Each of the '680, '798, '564, '554, '772, and '138 Patents issued from

U.S. Patent Application No. 11/116,783 or patent applications that are continuations or continuations-in-part of U.S. Patent Application No. 11/116,783.

## BACKGROUND OF THE DISPUTE

## MOVE IS A PIONEER OF ADAPTIVE BITRATE TECHNOLOGY

24.     Drew Major founded MOVE Networks, Inc. ("MOVE") in 2003 in American Fork, Utah (under the name XLon, until 2006).   MOVE invented HTTP-based Adaptive Bitrate Streaming to improve the quality of streamed video content over the Internet, and was the original owner of the ABR Patents.   While at MOVE, inventors David Brueck, Mark Hurst, and Drew Major (collectively, "the ABR Inventors") observed that the Internet was fast becoming a preferred method for distributing live and recorded video to individuals.   However, content delivery over the Internet at the time was notoriously unreliable, expensive and inferior in quality compared to cable and satellite delivered content.   To access video content online, users were left with two mediocre choices: (1) waiting for their content to download (which did not support immediate viewing of live content and often required the user to select the quality desired: LOW, MEDIUM, or HIGH, which in turn determined how long the user had to wait before viewing); or (2) streaming live or recorded content that often was unreliable (pausing to "buffer") or only worked at low-resolution.

25.     The ABR Inventors knew that media streaming had not reached its full potential and that, through research and improvement, it was possible that streaming could rival the quality of cable and satellite delivered content.   The current state-of-the-art was unacceptable prior to the inventions disclosed in the patents-in-suit.   Often during playback, the streaming technologies did a poor job selecting the video quality / resolution that the network bandwidth and reliability could support.   Most commercial systems, from companies like RealNetworks, Adobe, Microsoft, or

Apple, were proprietary implementations based on public Internet standards (RTP/RTSP). Common standards notwithstanding, the proprietary implementations were mutually incompatible. They were expensive to deploy by the Content Delivery Networks ("CDNs") and required many servers to scale to a large number of viewers. In addition, these technologies often required custom server architectures and routing IT configurations to penetrate Internet firewalls. The ABR Inventors recognized these shortcomings as an opportunity and they developed a better solution.

26.     The ABR Patents' specifications detail the need for improved data transport in content streaming. Users will generally choose streaming over downloading because "they tend to want to see or hear the media files instantaneously." *See, e.g.*, '554 Patent, Exhibit A, at col. 1, ll. 66–67. Unfortunately for protocols at the time, "[s]treaming offers the advantage of immediate access to the content but currently sacrifices quality compared with downloading a file of the same content." *See, e.g.*, *id.* col. 2, lines 1–4. The ABR Inventors observed that "a need exists for an [invention] that alleviates the problems of reliability, efficiency, and latency" encountered in currently available content streaming systems. *See, e.g.*, *id.* col. 2, ll. 59-61.

27.     To address these needs, the ABR Inventors came up with a novel solution: HTTP-based Adaptive Bitrate Streaming. ABR segments the full content file into smaller units ("streamlets") in multiple bitrates and delivers them over HTTP / TCP, the underlying protocols used for reliably transmitting data over the Internet. The ABR Inventors' approach enables content delivery to adapt to the bandwidth available at any particular time, ensuring delivery of the highest possible quality content throughout the course of the stream. The playback client device continuously observes the quality of a user's network connection and adjusts the requested quality of the streamed content. The other RTP/RTSP-based technologies used a client / server architecture, where the server determined the bitrate to send to the client. The other technologies

also did not segment the content, usually delivering it as a continuous stream of bits or as a single large file. Segmenting the content allows the playback device to easily change bitrates. The result is that today, MOVE's patented ABR technology allows Internet users to stream content from across the world in real time at the highest possible quality.

28. The ABR Patents' specifications describe how the MOVE inventors significantly improved the user viewing experience of streaming content data over a network: "[A] need exists for an apparatus, system, and method that alleviate the problems of reliability, efficiency, and latency [during data transport streaming over a network]. Additionally, such an apparatus, system, and method would offer instantaneous viewing along with the ability to fast forward, rewind, direct seek, and browse multiple streams." *See, e.g.*, *id.* col. 2, ll. 37–43.

29. One unconventional but fundamental improvement described in the ABR Patents is the creation of sets of streamlets from the original large content file, where a plurality of streamlets in each set are aligned by starting time and duration (typically a few seconds) but have different bitrates. Contiguous playback of the streamlets independently yields playback of the full content. The common alignment of the streamlets in each set allows a playback device to select one quality of streamlet from a particular set, and, as needed to adjust for changing bandwidth resources, to select a different quality of streamlet from the subsequent set. When the bandwidth of the user's network is constrained, the client can select a lower bitrate to maintain playback continuity instead of "buffering." This eliminates the need for users to download the full content file before beginning playback. Segmenting the media into streamlets enables users to retrieve and enjoy content at the best appropriate bitrate possible as the media is streamed. It is also well suited for live stream playback.

30. Another non-routine and revolutionary improvement described in the ABR Patents is that the client (rather than the server) controls switching between different bitrates. The benefits of using an intelligent client to make the decisions and switch between different bitrate streamlets are two-fold. First, the client is in a better position to determine the appropriate streamlet by measuring the actual throughput of the network at its point of reception. Second, moving the decision-making to the client effectively eliminates the need for a customized video server. Instead, a standard web server can be employed to host all the content's streamlets. Streamlets are requested by a client using the standard HTTP/TCP protocol—the web standard upon which the Internet is built. Custom IT configurations are unnecessary as the file requests operate on the same "port 80" as all web server requests. Access to the segmented content can be scaled exponentially through the use of standardized web caches. Together, these benefits represent a vast reduction in operating and publishing costs versus RTP/RTSP-based systems.

31. The ABR Inventors' improvements to streaming succeeded where others tried and failed. During the late 1990s, established streaming companies, including RealNetworks, Adobe, Microsoft, and Apple, separately attempted to develop a successful multiple bitrate streaming platform by using proprietary implementations of the RTP/RTSP standards. None of these systems succeeded at making bitrate switching consistent and none actually worked over the Internet.

## ABR PATENTS SELL FOR $45 MILLION

32. In December of 2010, EchoStar Advanced Technologies L.L.C., then a wholly owned subsidiary of EchoStar Corporation, spent $45 million to acquire MOVE and its ABR Patent portfolio. Recognizing the ingenuity of MOVE's ABR technology and the value-added for its customers and their increasing interest in quality online content delivery, DISH affiliate DISH Digital Holding L.L.C. acquired EchoStar Advanced Technologies L.L.C. in connection with a

joint venture with EchoStar Corporation in 2012. EchoStar Advanced Technologies L.L.C., which was later renamed DISH Digital L.L.C., transferred the ABR Patents to EchoStar Technologies L.L.C. (a subsidiary of EchoStar Corporation) in 2014. In February 2017, EchoStar Technologies L.L.C. became a subsidiary of DISH Network L.L.C., and in February 2018, was renamed DISH Technologies L.L.C.

33.     Two of the three ABR Inventors became and remain Utah-based DISH employees that work from DISH's offices in American Fork, Utah. The third inventor resides in Utah.

34.     DISH and its affiliated companies are a leading provider of satellite TV and Internet streaming services and serve approximately nine million subscribers in the United States. It is a leading investor and innovator in infrastructure and technologies that will meet the personalized needs of its increasingly diverse pool of customers. Since its founding, DISH and its affiliated companies have invested millions in research and development and acquisition of novel technologies that will resolve long-felt problems and needs across its industry.

35.     As the public continues to increasingly rely on the Internet for its informational and entertainment needs, DISH and its affiliated companies have dedicated great time and resources to improving the quality of streaming media. The specific entities that implement and own the technology covered by MOVE's patent portfolio have undergone significant evolution. These entities continue to improve upon ABR technology and advance reliable delivery of high-resolution content over the Internet.

36.     DISH's recent investments in ABR technology have already proven a success. ABR is one of the primary contributors to Sling TV's popularity. Sling TV L.L.C. is DISH and its affiliated companies' main Internet-delivered content provider, offering programming to numerous Internet streaming devices. Since the launch of Sling TV in the beginning of 2015,

Sling TV has grown to over two million subscribers, who are now receiving a live TV video experience comparable to cable or satellite.

### DEFENDANT'S PRODUCTS AND SERVICES INFRINGE THE ABR PATENTS

37.     Defendants have been and are now directly infringing and/or indirectly infringing the ABR Patents.

38.     On information and belief, Defendants are distributors of content via the Internet.  Each Defendant makes, uses, sells, and offers for sale in the United States products and services that infringe the ABR Patents, namely, the Accused Streaming Services, and each continues to do so.

39.     On information and belief, the Accused Streaming Services provide either live and/or on-demand videos according to the HTTP Live Streaming protocol ("HLS") and the limitations covered by the DISH-owned patents asserted in the present lawsuit.

40.     Further, on information and belief, Defendants directly and indirectly control the quality of the playback offered by the Accused Streaming Services.  On information and belief, Defendants "have a dedicated team working strictly on the video player…[whose] first priority is to monitor performance and efficiency" of Defendants' video players.  As part of Defendants' quality control, Defendants continually strive to mimic the seamless adaptive bitrate streaming system taught by HLS, "otherwise the video would constantly stutter and have artifacts."  *See* Exhibit G, David Walsh, *Interview with a Pornhub Web Developer*, DWB (Oct. 7, 2019), accessible via https://davidwalsh.name/pornhub-interview.

### RECENTLY FILED NDCA LAWSUIT BY MG FREESITES LTD

41.     On March 17, 2023, DISH sent a letter to a Canadian address listed as the office of MindGeek Montreal Chief Legal Officer, Anthony Penhale.  A true and correct copy of the March 17, 2023 letter is attached as Exhibit H. The letter enclosed U.S. Patent No. 10,757,156 and

informed Mr. Penhale that DISH owned a portfolio of patent assets used in adaptive bit-rate streaming standards, and informed Mr. Penhale of MindGeek that the ITC recently found several other parties that used products using HLS and/or MPEG-DASH infringed certain claims of those patents.

42.     On April 13, 2023, twenty-seven days later, DISH heard back from attorney Frank Gasparo from the Venable LLP law firm claiming to represent MindGeek, without identifying any specific corporate entity in the letter.  Exhibit I.  In that letter, Mr. Gasparo stated that he would be in touch.

43.     DISH did not receive any further communications, so DISH followed up with Mr. Gasparo on July 7, 2023, providing exemplary claim charts and availability to discuss terms of a license. Exhibit J, at 5.

44.     On July 12, 2023, Mr. Gasparo responded by email confirming receipt of the claim charts, and identifying that he would get back to DISH to "arrange a call once we have had a chance to review the charts." Exhibit K, at 4. On July 21, 2023, nine days after confirming receipt of the claim charts, Mr. Gasparo requested DISH's availability to discuss the claim charts.  DISH's in-house counsel provided availability and in an email at 10:19 a.m. Eastern Time on July 25, 2023, a call was set for the next day, July 26, at 1 p.m. Eastern Time. *Id.* at 3-4.

45.     However, on the evening of July 25, 2023, without further communication to DISH, a different company never previously addressed by DISH or identified by the attorneys at Venable, MG Freesites Ltd filed an action in the Northern District of California against DISH seeking a declaratory judgment of non-infringement of U.S. Patent Nos. 10,469,555, 10,757,156, and 11,470,138 (the "Declaratory Judgment Action").  Exhibit L.  Prior to this lawsuit, MG Freesites Ltd, had never before been brought up in emails, correspondence, or any communication between

DISH and Mr. Gasparo. MG Freesites Ltd filed its Declaratory Judgment Action the day before the Venable law firm, which claimed to represent MindGeek, was scheduled to meet with DISH.

46.     In its Declaratory Judgment Action, MG Freesites Ltd lists, as counsel, Mr. Gasparo and four other attorneys with Venable LLP.

47.     In its Declaratory Judgment Action, MG Freesites Ltd alleges that it is an entity located in the Republic of Cyprus and claims to operate the free version of the Pornhub website. It does not appear to have any assets in the United States.  *See* Exhibit L, at 2.

48.     The entities sued in the present lawsuit are separate legal entities from MG Freesites Ltd.  Specifically, MG Premium, Ltd has separate and distinct accounts, funds, and a separately identifiable board from MG Freesites Ltd.  Further, the Accused Streaming Services are separate from the streaming services operated by MG Freesites Ltd. *See* Exhibit M, at 2-3 (Declaration of A. Andreou, *Fleites v. MindGeek*, No. 2:21-cv-04920, Dkt. 70-2, at 2)

49.     Only one of the patents in this action overlaps with the patents at issue in MG Freesites Ltd's Declaratory Judgment Action. None of the parties sued in this lawsuit are present or named in the Declaratory Judgment Action.

## CLAIMS FOR RELIEF

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,469,554

### DIRECT INFRINGEMENT

50.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–49 of the Complaint as if fully set forth herein.

51.     On information and belief, Defendants indirectly infringe, literally and/or under the doctrine of equivalents, at least claim 16 of the '554 Patent, which recites:

> An end user station to stream a live event video over a network from a server for playback of the video, the content player device comprising:

a processor;

a digital processing apparatus memory device comprising non-transitory machine-readable instructions that, when executed, cause the processor to:

establish one or more network connections between the end user station and the server, wherein the server is configured to access at least one of a plurality of groups of streamlets;

wherein the live event video is encoded at a plurality of different bitrates to create a plurality of streams including at least a low quality stream, a medium quality stream, and a high quality stream, each of the low quality stream, the medium quality stream, and the high quality stream comprising a group of streamlets encoded at the same respective one of the different bitrates, each group comprising at least first and second streamlets, each of the streamlets corresponding to a portion of the live event video;

wherein at least one of the low quality stream, the medium quality stream, and the high quality stream is encoded at a bit rate of no less than 600 kbps; and

wherein the first streamlets of each of the low quality stream, the medium quality stream and the high quality stream each has an equal playback duration and each of the first streamlets encodes the same portion of the live event video at a different one of the different bitrates;

select a specific one of the low quality stream, the medium quality stream, and the high quality stream based upon a determination by the end user station to select a higher or lower bitrate version of the streams;

place a streamlet request to the server over the one or more network connections for the first streamlet of the selected stream;

receive the requested first streamlet from the server via the one or more network connections; and

provide the received first streamlet for playback of the live event video.

52.     The Accused Streaming Services receive segments of a selected live video program for playback of programming over a network connection.  The Accused Streaming Services adapt requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection.  Exhibit N to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

53.     Defendants provide subscribers to the Accused Streaming Services who are located in the United States with live streams and videos on demand in the United States.  On information and belief, Defendants perform all the limitations of at least claim 16 of the '554 Patent in the United States.

54.     Defendants possess knowledge of, and are aware of, the '554 Patent, or became aware at the time of filing this lawsuit.

55.     Defendants' acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

56.     Defendants' actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, Defendants will continue these infringing acts unless enjoined by this court.

### INDIRECT INFRINGEMENT BY INDUCEMENT

57.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–56 of the Complaint as if fully set forth herein.

58.     Defendants are liable for inducing infringement of the '554 Patent under 35 U.S.C. § 271(b) by having knowledge of the '554 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '554 Patent, with specific intent, by their customers.

59.     Specifically, Defendants actively induce infringement of the '554 Patent by, *inter alia*, training their customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to Defendants' customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '554 Patent.

60.     Defendants' customers of the Accused Streaming Services directly infringe the '554 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

61.     For example, Defendants actively induce infringement of the '554 Patent, because Defendants have knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use Defendants' infringing Accused Streaming Services in the United States, and because Defendants encourage such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to Defendants' customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '554 Patent.

62.     On information and belief, Defendants intend to, and continue to intend to, indirectly infringe the '554 Patent through inducement of the sale and use of the Accused Streaming Services.

63.     The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe and DISH since DISH's acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, Defendants would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '554 Patent.

64.     On information and belief, despite knowing that their actions constituted induced infringement of the '554 Patent and/or despite knowing that there was a high likelihood that their actions constituted induced infringement of the patent, Defendants nevertheless continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

65.     Defendants continue to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '554 Patent.

66.     Defendants' acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

67.     Defendants' actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, Defendants will continue these infringing acts unless enjoined by this Court.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

68.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–67 of the Complaint as if fully set forth herein.

69.     Defendants are liable for contributory infringement of the '554 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '554 Patent, which Defendants know to be especially made and/or especially adapted for use in infringement of the '554 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

70.     Defendants are liable for contributory infringement by having knowledge of the '554 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '554 Patent by their customers, including users and subscribers, who use the Accused Streaming Services.

71.     Specifically, Defendants contribute to infringement of the '554 Patent by, inter alia, promotion, and/or sales of the infringing Accused Streaming Services to Defendants' customers,

including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '554 Patent. Those customers directly infringe the '554 Patent by using the Accused Streaming Services.

72.     For example, Defendant MG Premium, Ltd is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, customers of the Accused Streaming Services, including users and subscribers, to directly infringe the '554 Patent by using the Accused Streaming Services in the United States.

73.     The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe and DISH since DISH's acquisition and continuing development of MOVE's patent portfolio. On information and belief, as a provider of streamed content, Defendants would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '554 Patent.

74.     Defendants continue to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '554 Patent.

75.     Defendants' past and ongoing infringement of the '554 Patent has and will continue to irreparably harm DISH.

76.     Defendants' past and ongoing infringement of the '554 Patent has and will continue to cause DISH damages.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 11,677,798

### DIRECT INFRINGEMENT

77.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–76 of the Complaint as if fully set forth herein.

78.     On information and belief, Defendants directly infringe, literally and/or under the doctrine of equivalents, at least claim 1 of the '798 Patent, which recites:

> A system for adaptive-rate content streaming of digital content playable on one or more end user stations over the Internet, the system comprising:
>
> at least one storage device storing digital content, the digital content encoded at a plurality of different bit rates creating a plurality of streams including a first bit rate stream, a second bit rate stream, and a third bit rate stream, wherein the first bit rate stream, the second bit rate stream, and the third bit rate stream each comprise a group of streamlets encoded at a respective one of the plurality of different bit rates, each group of streamlets comprising at least first and second streamlets, each of the streamlets corresponding to a portion of the digital content;
>
> wherein at least one of the first bit rate stream, the second bit rate stream, and the third bit rate stream is encoded at a bit rate of no less than 600 kbps; and
>
> wherein the first streamlet of each of the groups has the same first duration and encodes the same first temporal portion of the digital content in each of the first bit rate stream, the second bit rate stream, and the third bit rate stream, and wherein the first streamlet of the first bit rate stream encodes the same first temporal portion of the digital content at a different bit rate than the first streamlet of the second bit rate stream and the first streamlet of the third bit rate stream.

The Accused Streaming Services provide segments of a selected video program for playback of programming on end user stations over a network connection.  The Accused Streaming Services adapt requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection.  Exhibit O to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

79.     Defendants provide subscribers to the Accused Streaming Services who are located in the United States with live streams and videos on demand in the United States.  On information and belief, Defendants perform all the limitations of at least claim 1 of the '798 Patent in the United States.

80.   Defendants possess knowledge of, and are aware of, the '798 Patent, or became aware of this patent at the time of filing this lawsuit.

81.   Defendants' acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

82.   Defendants' actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, Defendants will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

83.   DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–82 of the Complaint as if fully set forth herein.

84.   Defendants are liable for inducing infringement of the '798 Patent under 35 U.S.C. § 271(b) by having knowledge of the '798 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '798 Patent, with specific intent, by their customers.

85.   Specifically, Defendants actively induce infringement of the '798 Patent by, *inter alia*, training their customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to Defendants' customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '798 Patent.

86.   Defendants' customers of the Accused Streaming Services directly infringe the '798 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

87.   For example, Defendants' actively induce infringement of the '798 Patent, because Defendants have knowledge that end users of the Accused Streaming Services including, but not

limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, provide end user stations for the infringing Accused Streaming Services in the United States, and because Defendants encourage such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to Defendants' customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '798 Patent.

88.    On information and belief, Defendants intend to, and continue to intend to, indirectly infringe the '798 Patent through inducement of the sale and use of the Accused Streaming Services.

89.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe and DISH since DISH's acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, Defendants' would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '798 Patent.

90.    On information and belief, despite knowing that their actions constituted induced infringement of the '798 Patent and/or despite knowing that there was a high likelihood that their actions constituted induced infringement of the patent, Defendants' nevertheless continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

91.    Defendants' continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '798 Patent.

92.    Defendants' acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

93.     Defendants' actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, Defendants' will continue these infringing acts unless enjoined by this Court.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

94.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–93 of the Complaint as if fully set forth herein.

95.     Defendants are liable for contributory infringement of the '798 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '798 Patent, which Defendants know to be especially made and/or especially adapted for use in infringement of the '798 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

96.     Defendants are liable for contributory infringement by having knowledge of the '798 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '798 Patent by their customers, including users and subscribers, who use the Accused Streaming Services.

97.     Specifically, Defendant MG Premium, Ltd contributes to infringement of the '798 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to customers of the Accused Streaming Services, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '798 Patent.  Those customers directly infringe the '798 Patent by using the Accused Streaming Services.

98.     For example, Defendants are liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, Defendants' customers, including users and subscribers, to directly infringe the '798 Patent by using the Accused Streaming Services in the United States.

99.     The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe and DISH since DISH's acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, Defendants would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '798 Patent.

100.    Defendants continue to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '798 Patent.

101.    Defendants' past and ongoing infringement of the '798 Patent has and will continue to irreparably harm DISH.

102.    Defendants' past and ongoing infringement of the '798 Patent has and will continue to cause DISH damages.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 9,407,564

### DIRECT INFRINGEMENT

103.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–102 of the Complaint as if fully set forth herein.

104.    On information and belief, Defendants directly infringe, literally and/or under the doctrine of equivalents, at least claim 8 of the '564 Patent, which recites:

A method executable by an end user station to present rate-adaptive streams received via at least one transmission control protocol (TCP) connection with a server over a network, the method comprising;

streaming, by a media player operating on the end user station, a video from the server via the at least one TCP connection over the network, wherein multiple different copies of the video encoded at different bit rates are stored as multiple sets of files on the server, wherein each of the files yields a different portion of the video on playback, wherein the files across the different copies yield the same portions of the video on playback, and wherein each of the files comprises a time index such that the files whose playback is the same portion of the video for each of the different copies have the same time index in relation to the beginning of the video, and wherein the streaming comprises:

requesting by the media player a plurality of sequential files of one of the copies from the server based on the time indexes;

automatically requesting by the media player from the server subsequent portions of the video by requesting for each such portion one of the files from one of the copies dependent upon successive determinations by the media player to shift the playback quality to a higher or lower quality one of the different copies, the automatically requesting including repeatedly generating a factor indicative of the current ability to sustain the streaming of the video using the files from different ones of the copies, wherein the factor relates to the performance of the network; and

making the successive determinations to shift the playback quality based on the factor to achieve continuous playback of the video using the files of the highest quality one of the copies determined sustainable at that time, wherein the making the successive determinations to shift comprises upshifting to a higher quality one of the different copies when the at least one factor is greater than a first threshold and downshifting to a lower quality one of the different copies when the at least one factor is less than a second threshold; and

presenting the video by playing back the requested media files with the media player on the end user station in order of ascending playback time.

105.    The Accused Streaming Services receive segments of a selected video program for playback of programming over a network connection. The Accused Streaming Services adapt requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection. Exhibit P to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

106. Defendants provide subscribers to the Accused Streaming Services who are located in the United States with live streams and videos on demand in the United States. On information and belief, Defendants perform all the limitations of at least claim 8 of the '564 Patent in the United States.

107. Defendants possess knowledge of, and are aware of, the '564 Patent, or became aware of this patent at the time of filing this lawsuit.

108. Defendants' acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

109. Defendants' actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market. Upon information and belief, Defendants' will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

110. DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–109 of the Complaint as if fully set forth herein.

111. Defendants are liable for inducing infringement of the '564 Patent under 35 U.S.C. § 271(b) by having knowledge of the '564 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '564 Patent, with specific intent, by their customers.

112. Specifically, Defendants actively induce infringement of the '564 Patent by, *inter alia*, training their customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to Defendants' customers including, but not limited to,

end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '564 Patent.

113.    Defendants' customers of the Accused Streaming Services directly infringe the '564 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

114.    For example, Defendant MG Premium, Ltd actively induces infringement of the '564 Patent, because MG Premium, Ltd has knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use MG Premium, Ltd's infringing Accused Streaming Services in the United States, and because MG Premium, Ltd encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to Defendants' customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '564 Patent.

115.    On information and belief, Defendants intend to, and continue to intend to, indirectly infringe the '564 Patent through inducement of the sale and use of the Accused Streaming Services.

116.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe and DISH since DISH's acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, Defendants would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '564 Patent.

117.    On information and belief, despite knowing that their actions constituted induced infringement of the '564 Patent and/or despite knowing that there was a high likelihood that their

actions constituted induced infringement of the patent, Defendants nevertheless continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

118. Defendants continue to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '564 Patent.

119. Defendants' acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

120. Defendants' actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market. Upon information and belief, Defendants will continue these infringing acts unless enjoined by this Court.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

121. DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–120 of the Complaint as if fully set forth herein.

122. Defendants are liable for contributory infringement of the '564 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '564 Patent, which Defendants know to be especially made and/or especially adapted for use in infringement of the '564 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

123. Defendants are liable for contributory infringement by having knowledge of the '564 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '564 Patent by their customers, including users and subscribers, who use the Accused Streaming Services.

124.    Specifically, Defendant MG Premium, Ltd contributes to infringement of the '564 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to its customers, including users and subscribers to the Accused Streaming Services, for their use of adaptive-rate content streaming as claimed in the '564 Patent.  Those customers directly infringe the '564 Patent by using the Accused Streaming Services.

125.    For example, Defendants are liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, Defendants' customers, including users and subscribers, to directly infringe the '564 Patent by using the Accused Streaming Services in the United States.

126.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe and DISH since DISH's acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, Defendants would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '564 Patent.

127.    Defendants continue to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '564 Patent.

128.    Defendants' past and ongoing infringement of the '564 Patent has and will continue to irreparably harm DISH.

129.    Defendants' past and ongoing infringement of the '564 Patent has and will continue to cause DISH damages.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 10,951,680

### DIRECT INFRINGEMENT

130.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–129 of the Complaint as if fully set forth herein.

131.    On information and belief, Defendants directly infringe, literally and/or under the doctrine of equivalents, at least claim 22 of the '680 Patent, which recites:

> A process executable by one or more servers to stream a video for playback by one or more end user stations, the process comprising:
>
> storing, by the one or more servers, one or more virtual timelines corresponding to a plurality of streams including a low quality stream, a medium quality stream, and a high quality stream, wherein the low quality stream, the medium quality stream, and the high quality stream each comprise a group of streamlets encoded at a respective one of a plurality of different bitrates, each group comprising at least first and second streamlets, each of the streamlets corresponding to a portion of the video;
>
> wherein at least one of the low quality stream, the medium quality stream, and the high quality stream is encoded at a bitrate of no less than 600 kbps; and wherein the first streamlet of each of the groups of streamlets has the same first duration and encodes the same first portion of the video in the low quality stream, the medium quality stream, and the high quality stream, the first streamlet of the low quality stream having a different one of the different bitrates than the first streamlet of the high quality stream and the first streamlet of the medium quality stream;
>
> receiving at least one virtual timeline request over one or more internet connections from the one or more end user stations to retrieve a virtual timeline correspond to the first streamlet storing the first portion of the video,
>
> wherein the at least one streamlet request from the one or more end user stations includes a request for a currently selected first streamlet from one of the low quality stream, the medium quality stream, and the high quality stream based upon a determination by the end user station to select a higher or lower bitrate version of the video;
>
> retrieving from the storage device the requested virtual timeline for the currently selected one of the low quality stream, the medium quality stream, and the high quality stream; and
>
> sending the retrieved virtual timeline to the requesting one of the end user stations over the one or more network connections.

132.    The Accused Streaming Services receive segments of selected video programs from at least one server for playback of programming over a network connection.  On information and

belief, at least one server of the Accused Streaming Services stores at least one virtual timeline indicating the location of each video segment within the selected video program. The Accused Streaming Services receive requests from end user stations for the virtual timelines via an online connection and subsequently retrieve the virtual timeline corresponding to the first segments from a set of segments within the video program. The Accused Streaming Services provide the retrieved segments of the same content to the end user station of varying quality, based upon the quality of the network connection and determination made by an end user station. Exhibit Q to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

133.    Defendants provide subscribers to the Accused Streaming Services who are located in the United States with live streams and videos on demand in the United States. On information and belief, Defendants perform all the limitations of at least claim 22 of the '680 Patent in the United States.

134.    Defendants possess knowledge of, and are aware of, the '680 Patent, or became aware of this patent at the time of filing this lawsuit.

135.    Defendants' acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

136.    Defendants' actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market. Upon information and belief, Defendant will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

137.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–136 of the Complaint as if fully set forth herein.

138.    Defendants are liable for inducing infringement of the '680 Patent under 35 U.S.C. § 271(b) by having knowledge of the '680 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '680 Patent, with specific intent, by their customers.

139.    Specifically, Defendants actively induce infringement of the '680 Patent by, inter alia, training their customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to Defendants' customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '680 Patent.

140.    Defendants' customers of the Accused Streaming Services directly infringe the '680 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

141.    For example, Defendants actively induce infringement of the '680 Patent because Defendants have knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use Defendants' infringing Accused Streaming Services in the United States, and because Defendants encourage such acts resulting in direct patent infringement, by, inter alia, training, promotion, and/or sales of the Accused Streaming Services to Defendants customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '680 Patent.

142.    On information and belief, Defendants intend to, and continue to intend to, indirectly infringe the '680 Patent through inducement of the sale and use of the Accused Streaming Services.

143. The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe and DISH since DISH's acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, Defendants would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '680 Patent.

144. On information and belief, despite knowing that their actions constituted induced infringement of the '680 Patent and/or despite knowing that there was a high likelihood that their actions constituted induced infringement of the patent, Defendants nevertheless continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

145. Defendants continue to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '680 Patent.

146. Defendants' acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

147. Defendants' actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, Defendants will continue these infringing acts unless enjoined by this Court.

**INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT**

148. DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–147 of the Complaint as if fully set forth herein.

149. Defendants are fully liable for contributory infringement of the '680 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused

Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '680 Patent, which Defendants know to be especially made and/or especially adapted for use in infringement of the '680 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

150.    Defendants are liable for contributory infringement by having knowledge of the '156 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '680 Patent by their customers, including users and subscribers, who use the Accused Streaming Services.

151.    Specifically, Defendants contribute to infringement of the '680 Patent by, inter alia, promotion, and/or sales of the infringing Accused Streaming Services to Defendants' customers, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '680 Patent.  Those customers directly infringe the '680 Patent by using the Accused Streaming Services.

152.    For example, MG Premium, Ltd is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, customers of the Accused Streaming Services, including users and subscribers, to directly infringe the '680 Patent by using the Accused Streaming Services in the United States.

153.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe and DISH since DISH's acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, Defendants would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '680 Patent.

154.   Defendants continue to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '680 Patent.

155.   Defendants' past and ongoing infringement of the '680 Patent has and will continue to irreparably harm DISH.

156.   Defendants' past and ongoing infringement of the '680 Patent has and will continue to cause DISH damages.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 8,868,772

### DIRECT INFRINGEMENT

157.   DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–156 of the Complaint as if fully set forth herein.

158.   On information and belief, Defendants directly infringe, literally and/or under the doctrine of equivalents, at least claim 1 of the '772 Patent, which recites:

> A method for presenting rate-adaptive streams, the method comprising::
>
> streaming by a media player operating on an end user station a video from a set of one or more servers, wherein each of a plurality of different copies of the video encoded at different bit rates is stored as multiple files on the set of servers, wherein each of the multiple files yields a different portion of the video on playback, wherein the multiple files across the different copies yield the same portions of the video on playback, each of said files having a time index such that the files whose playback is the same portion of the video for each of the different copies have the same time index in relation to the beginning of the video, and wherein the streaming comprises:
>
> requesting by the media player a plurality of sequential ones of the files of one of the copies from the set of servers over a plurality of Transmission Control Protocol (TCP) connections based on the time indexes;
>
> automatically requesting by the media player from the set of servers over the plurality of TCP connections subsequent portions of the video by requesting for each such portion one of the files from one of the copies dependent upon successive determinations by the media player to shift the playback quality to a higher or lower quality one of the different copies, said automatically requesting including,

    repeatedly generating a set of one or more factors indicative of the current ability to sustain the streaming of the video using the files from different ones of the copies, wherein the set of one or more factors relate to the performance of the network; and

    making the successive determinations to shift the playback quality based on at least one of the set of factors to achieve continuous playback of the video using the files of the highest quality one of the copies determined sustainable at that time; and

    presenting the video by playing back with the media player on the end user station the requested files in order of ascending playback time.

159.    The Accused Streaming Services present segments of a selected video program for playback of programming over a network connection. The Accused Streaming Services adapt requests for sequential segments from a set of segments with the same content but varying quality based upon the quality of the network connection. Exhibit R to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

160.    Defendants provide subscribers to the Accused Streaming Services who are located in the United States with live streams and videos on demand in the United States. On information and belief, Defendants perform all the limitations of at least claim 1 of the '772 Patent in the United States.

161.    Defendants possess knowledge of, and are aware of, the '772 Patent, or became aware of this patent at the time of filing this lawsuit.

162.    Defendants' acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

163.    Defendants' actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market. Upon information and belief, Defendants' will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT

164.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–163 of the Complaint as if fully set forth herein.

165.    On information and belief, Defendants indirectly infringe, literally and/or under the doctrine of equivalents, at least claim 1 of the '772 Patent

## INDIRECT INFRINGEMENT BY INDUCEMENT

166.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–165 of the Complaint as if fully set forth herein.

167.    Defendants are liable for inducing infringement of the '772 Patent under 35 U.S.C. § 271(b) by having knowledge of the '772 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '772 Patent, with specific intent, by their customers.

168.    Specifically, Defendants actively induce infringement of the '772 Patent by, *inter alia*, training their customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to Defendants' customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '772 Patent.

169.    Defendants' customers of the Accused Streaming Services directly infringe the '772 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

170.    For example, Defendant MG Premium, Ltd actively induces infringement of the '772 Patent, because MG Premium, Ltd has knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use the infringing Accused Streaming

Services in the United States, and because MG Premium, Ltd encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to Defendants customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '772 Patent.

171.    On information and belief, Defendants intend to, and continue to intend to, indirectly infringe the '772 Patent through inducement of the sale and use of the Accused Streaming Services.

172.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe and DISH since DISH's acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, Defendants would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '772 Patent.

173.    On information and belief, despite knowing that their actions constituted induced infringement of the '772 Patent and/or despite knowing that there was a high likelihood that their actions constituted induced infringement of the patent, Defendants nevertheless continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

174.    Defendants continue to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '772 Patent.

175.    Defendants' acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

176.    Defendants' actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon

information and belief, Defendants will continue these infringing acts unless enjoined by this Court.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

177. DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–176 of the Complaint as if fully set forth herein.

178. Defendants are liable for contributory infringement of the '772 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '772 Patent, which Defendants know to be especially made and/or especially adapted for use in infringement of the '772 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

179. Defendants are liable for contributory infringement by having knowledge of the '772 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '772 Patent by their customers, including users and subscribers, who use the Accused Streaming Services.

180. Specifically, Defendants contribute to infringement of the '772 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to Defendants' customers, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '772 Patent. Those customers directly infringe the '772 Patent by using the Accused Streaming Services.

181. For example, Defendant MG Premium, Ltd is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause,

customers of the Accused Streaming Services, including users and subscribers, to directly infringe the '772 Patent by using the Accused Streaming Services in the United States.

182.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe and DISH since DISH's acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, Defendants' would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '772 Patent.

183.    Defendants continue to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '772 Patent.

184.    Defendants' past and ongoing infringement of the '772 Patent has and will continue to irreparably harm DISH.

185.    Defendants' past and ongoing infringement of the '772 Patent has and will continue to cause DISH damages.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 11,470,138

### DIRECT INFRINGEMENT

186.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–185 of the Complaint as if fully set forth herein.

187.    On information and belief, Defendants directly infringe, literally and/or under the doctrine of equivalents, at least claim 14 of the '138 Patent, which recites:

> An end user station to stream a video over a network from a server for payback of the video, the end user station comprising:
>
> a processor;

a digital processing apparatus memory device comprising non-transitory machine-readable instructions that, when executed, cause the processor to:

establish an internet connection between the end user station and the server, wherein the server is configured to access at least one of a plurality of groups of streamlets;

wherein the video is encoded at a plurality of different bitrates to create a plurality of streams including at least a low quality stream, a medium quality stream, and a high quality stream, each of the low quality stream, the medium quality stream, and the high quality stream comprising a group of streamlets encoded at the same respective one of the different bitrates, each group comprising at least first and second streamlets corresponding to a portion of the video;

wherein at least one of the low quality stream, the medium quality stream, and the high quality stream is encoded at a bitrate of no less than 600 kbps; and

wherein the first streamlet of each of the low quality stream, the medium quality stream, and the high quality stream each has an equal playback duration and each of the first streamlets encodes the same portion of the video at a different one of the different bitrates;

select a specific one of the low quality stream, the medium quality stream, and the high quality stream based upon a determination by the end user station to select a higher or lower bitrate version of the streams;

place a streamlet request to the server over the internet connection for the first streamlet of the selected stream;

receive the requested first streamlet from the server via the internet connection; and

provide the received first streamlet for playback of the video.

188. The Accused Streaming Services comprises a system for streaming segments of a selected video program to an end user station over a network connection. The Accused Streaming Services include at least one server for storing the video segments at various bit rates. Moreover the Accused Streaming Services adapt requests for sequential segments from a set of segments with the same content but varying quality based upon the quality of the network connection. Exhibit S to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

189.    Defendants provide subscribers to the Accused Streaming Services who are located in the United States with live streams and videos on demand in the United States.  On information and belief, Defendants perform all the limitations of at least claim 14 of the '138 Patent in the United States.

190.    Defendants possess knowledge of, and are aware of, the '138 Patent, or became aware of this patent at the time of filing its sham Declaratory Judgment lawsuit on July 25, 2023.  Further, Defendants possess knowledge of, and are aware of, the '138 Patent, or became aware of the '138 Patent at the time of filing this lawsuit.

191.    Defendants' acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

192.    Defendants' actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, Defendants' will continue these infringing acts unless enjoined by this court.

### INDIRECT INFRINGEMENT BY INDUCEMENT

193.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–192 of the Complaint as if fully set forth herein.

194.    Defendants are liable for inducing infringement of the '138 Patent under 35 U.S.C. § 271(b) by having knowledge of the '138 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '138 Patent, with specific intent, by their customers.

195.    Specifically, Defendants actively induce infringement of the '138 Patent by, *inter alia*, training their customers on the use of the Accused Streaming Services and/or promotion and/or

sales of the Accused Streaming Services to Defendants' customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '138 Patent.

196.    Defendants' customers of the Accused Streaming Services directly infringe the '138 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

197.    For example, Defendant MG Premium, Ltd actively induces infringement of the '138 Patent, because MG Premium, Ltd has knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use Defendants' infringing Accused Streaming Services in the United States, and because MG Premium, Ltd encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to customers of the Accused Streaming Services including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '138 Patent.

198.    On information and belief, Defendants intend to, and continue to intend to, indirectly infringe the '138 Patent through inducement of the sale and use of the Accused Streaming Services.

199.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe and DISH since DISH's acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, Defendants would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '138 Patent.

200. On information and belief, despite knowing that their actions constituted induced infringement of the '138 Patent and/or despite knowing that there was a high likelihood that their actions constituted induced infringement of the patent, Defendants nevertheless continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

201. Defendants continue to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '138 Patent.

202. Defendants' acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

203. Defendants' actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market. Upon information and belief, Defendants will continue these infringing acts unless enjoined by this Court.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

204. DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–203 of the Complaint as if fully set forth herein.

205. Defendants are liable for contributory infringement of the '138 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '138 Patent, which Defendants' know to be especially made and/or especially adapted for use in infringement of the '138 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

206. Defendants are liable for contributory infringement by having knowledge of the '138 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend

to cause, direct infringement of the '138 Patent by their customers, including users and subscribers, who use the Accused Streaming Services.

207. Specifically, Defendants contribute to infringement of the '138 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to Defendants' customers, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '138 Patent. Those customers directly infringe the '138 Patent by using the Accused Streaming Services.

208. For example, Defendant MG Premium, Ltd is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, customers of the Accused Streaming Services, including users and subscribers, to directly infringe the '138 Patent by using the Accused Streaming Services in the United States.

209. The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe and DISH since DISH's acquisition and continuing development of MOVE's patent portfolio. On information and belief, as a provider of streamed content, Defendants would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '138 Patent.

210. Defendant continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '138 Patent.

211. Defendants' past and ongoing infringement of the '138 Patent has and will continue to irreparably harm DISH.

212. Defendants' past and ongoing infringement of the '138 Patent has and will continue to cause DISH damages.

## DEFENDANTS' CONTINUED INFRINGEMENT CAUSES DISH IRREPARABLE HARM

213.     Defendants appear to have several entities operating out of Cyprus, and do not have any operations, employees, or facilities in the United States, despite directing a substantial portion of their business to the United States.  Even if DISH were to obtain a favorable judgment, there is no assurance that the entities sued here would satisfy a judgment or have collectible assets in the United States. Money damages thus are unlikely to be adequate, because Defendants are likely unable or unwilling to pay them.[1]

214.     DISH has a reasonable likelihood of success on the merits of its case. At least two of the patents asserted in this case, the '564, and '554 Patents, have previously been found to cover the same streaming standards, HTTP Live Streaming and MPEG-DASH, that Defendants use for the Accused Streaming Services.  That action was an International Trade Commission Action. *In the Matter of Certain Fitness Devices, Streaming Components Thereof, and Systems Containing Same*, Inv. No. 337-TA-1265 (Commission Opinion (Public Version), (Mar. 23, 2023)), at 1 & 93. (affirming ALJ's infringement findings) ("ITC Action"). DISH prevailed in infringement against Peloton, iFit, and MIRROR.

215.     In that ITC Action, the Commission also declared the asserted claims of the '564 and '554 Patents not invalid over prior art and over other invalidity challenges by Respondents.

---

[1] Enforcing non-European Union foreign judgments in Cyprus is particularly difficult.  Among other prejudicial hurdles DISH will face attempting to enforce a monetary judgment against the Cypriot defendants, Cypriot law gives Cypriot courts the authority to upend the enforceability of American judgments after conducting independent analyses into issues such as personal jurisdiction and public policy. *See* Exhibit T, at 11-13 (Browne et al., *Enforcement of Foreign Judgments*, LEXICOLOGY Aug. 26, 2022, available at https://www.pirilides.com/assets/modules/ppp/publications/230/docs/2023_enforcement_of_foreign_judgments_cyprus.pdf).

216. DISH cannot allow an unlicensed entity to continue infringement without consequence as additional potential licensees may be unwilling to license if DISH does not enforce its patent rights.

217. Defendants can also operate their business without infringing the patents by either not using DISH's patented technology to provide its streaming or taking a license. Defendants will not be harmed by either stopping use of the patented technology or taking a license. But DISH will suffer hardship if Defendants are allowed to continue their unlicensed use of DISH's patented streaming technology.

218. Allowing overseas foreign entities to infringe on United States patents and avoiding liability based on a corporate structure that appears to leave the Defendants unable to pay a judgment does not serve the public interest.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby request a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, DISH respectfully requests that this Court enter:

A. A judgment in favor of DISH that all Defendants have infringed the ABR Patents, directly, jointly, and/or indirectly by way of inducing and/or contributing to the infringement of the ABR Patents;

B. An order of this Court preliminarily and permanently enjoining Defendants and their officers, directors, agents, affiliates, employees, divisions, branches, subsidiaries, parents, and all others in active concert therewith from infringing, including inducing the infringement of, or contributing to the infringement of, the ABR Patents;

a. DISH has a reasonable likelihood of success of that at least one claim of the Asserted Patents is infringed by the Accused Streaming Services.

b. DISH has already withstood a substantial invalidity challenge by Respondents in the ITC Action and a full Commission has affirmed the validity of the Asserted Patents in that ITC Action. The remaining patents are part of that same family of patents.

c. MindGeek and related entities involved with streaming entities are involved in several lawsuits alleging exploitation, justice for survivors, and victims seeking damages and punitive penalties for exploitation. Pornhub - NCOSE (endsexualexploitation.org).

d. DISH will suffer irreparable harm in its efforts to license or stop infringement without a preliminary injunction. Defendants' operations appear to be designed to avoid liability due to the many exploitation cases pending against MindGeek and related entities. DISH's damages will be substantial and there is a high likelihood DISH will never be able to collect damages from the various foreign entities located in Cyprus, given that they lack any substantial presence in United States or recoverable assets in the United States. MindGeek and related entities may simply transition their business to another entity and continue operations.

e. While Defendants may receive funding on an as-needed basis to pay expenses, no excess cash appears available to satisfy a judgment.

   f. Defendants can operate their business without infringing the patents by not using DISH's patented streaming technology and thus will not suffer harm with a preliminary injunction is entered.

  C. A judgment and order requiring Defendants to pay DISH its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendants' infringement of the ABR Patents, as provided under 35 U.S.C. § 284;

  D. A judgment and order finding this case exceptional under 35 U.S.C. § 285 and awarding DISH its costs, disbursements, and attorneys' fees in connection with this action; and

  E. Such other and further relief to which DISH may show itself to be entitled and/or as the Court may deem just and proper.

Dated: August 22, 2023    Respectfully submitted,

     By:  /s/Brent O. Hatch   
        HATCH LAW GROUP
        Brent O. Hatch

       G. Hopkins Guy, III (*pro hac vice* to be filed)
       hop.guy@bakerbotts.com
       1001 Page Mill Road
       Building One, Suite 200
       Palo Alto, CA 94304
       Telephone: 650.739.7510
       Facsimile: 650.739.7699

       Ali Dhanani (*pro hac vice* to be filed)
       ali.dhanani@bakerbotts.com
       910 Louisiana St.,
       Houston, TX 77002
       Telephone: 281.250.2294
       Facsimile: 713.229.2808

       Kurt Pankratz (*pro hac vice* to be filed)
       kurt.pankratz@bakerbotts.com
       2001 Ross Ave., Suite 900
       Dallas, TX  75201
       (214) 953-6584

Telephone: 214.953.6584
Facsimile: 214.661.4584

*Attorneys for Plaintiffs*